IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **AHERN RENTALS, INC.,**  Plaintiff,  v.  **EQUIPMENTSHARE.COM, INC.**  Defendant. | Civil Action No. 2:20-cv-333  JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff Ahern Rentals, Inc. ("Ahern") bring this Complaint against Equipmentshare.com, Inc. ("EquipmentShare"), and alleges as follows:

### THE PARTIES

1. Plaintiff Ahern Rentals, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

2. Defendant Equipmentshare.com, Inc. is a Delaware corporation with its principal place of business in Columbia, Missouri.

3. EquipmentShare and Ahern are competitors in the equipment rental market.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, and 1338.

5. This Court has personal jurisdiction over EquipmentShare. EquipmentShare has continuous and systematic business contacts with the State of Texas. EquipmentShare, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its

1

business extensively throughout Texas, by shipping, offering for sale, selling, and advertising its products and services in the State of Texas and in the Eastern District of Texas that infringe the asserted patent.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

7. EquipmentShare is registered with the Texas Secretary of State to conduct business within Texas.

8. EquipmentShare maintains a regular and established place of business within the Eastern District of Texas at 10097 US-90, Beaumont, Texas, 77713, as evidenced on its website:[1]



9. EquipmentShare maintains more rental locations in Texas (12 locations) than in any other state.[2]

---

[1] https://www.equipmentshare.com/locations/beaumont
[2] https://www.equipmentshare.com/locations#Location-section

10. Ahern likewise maintains places of business in the Eastern District of Texas at 6301 West University Dr., McKinney, Texas, 75071 and 4925 West Cardinal Dr., Beaumont Texas, 77705.

11. EquipmentShare has offered, sold, or leased infringing products and services in the Eastern District of Texas, including at its physical location in Beaumont, which amount to acts of infringement under 28 U.S.C. § 1400(b).

## HISTORY OF AHERN

12. Ahern traces its history back to 1953, when John P. Ahern and Martha Ahern purchased a Signal Oil & Gas station at a site that is now the Stratosphere Casino near the Las Vegas Strip. From that gas station, Ahern started selling fuel and renting equipment, including window-mounted swamp automobile coolers used by tourists driving across the desert to California. Later, Ahern's rental inventory expanded to include trailers, hand tools, trucks, and construction equipment.

13. After years of tireless work, John and Martha Ahern's rental operation outgrew the Signal Oil & Gas station. The Ahern's relocated the rental business and opened up Ahern's Trailer and Equipment Rental in 1958. This business focused on renting tools and equipment to area residents.

14. The business expanded through the 1960s, and in 1970 John Ahern launched Ahern's Renter's Center, which offered a wide range of equipment for homeowners and local businesses. Around this time, the Ahern's son, Don Ahern, joined the family business and went on to open up his own small rental store in 1978, starting with a modest fleet of eight scissor lifts. As demand increased Don Ahern expanded the rental business (then called Los Arcos Equipment) across Southern Nevada and into Southern California by 1983.

15. In 1990 Don Ahern purchased Ahern Renter's Center from his father and combined it with Los Arcos to form Plaintiff Ahern Rentals, Inc. in 1997.

16. For more than 60 years Ahern organically expanded across the country, opening one location after another by utilizing its decades of experience and institutional knowledge to serve its ever-expanding clientele.

17. Ahern remains family owned to this day. Ahern currently operates more than 90 locations across more than 30 states and offers more than 59,000 rental items to customers in many sectors, including industrial and residential construction, utilities, municipalities, and entertainment. While Ahern is well-known for its high-reach equipment, its fleet also includes backhoes, skid steers, skip loaders, trenchers, compressors, generators, light towers, welders, lawn and garden equipment, and hand tools.

## EQUIPMENTSHARE

18. Upon information and belief, brothers Willy and Jabbok Schlacks cofounded EquipmentShare in November 2014. The brothers had little to no experience in the rental equipment industry when they formed EquipmentShare.

19. EquipmentShare provides the so-called EquipmentShare Track telematics system, which is used to track construction fleets and to gather information about the location and status of equipment in real time. EquipmentShare intended to use this telematics system to track and share equipment and become (as reported by certain media outlets) the "Airbnb of construction."

20. Despite an influx of capital from various sources, EquipmentShare's original model faced serious setbacks, leading it to open more regional brick-and-mortar equipment rental operations beginning in or around 2016.

21. Facing investor pressure to rapidly expand, EquipmentShare engaged in a concerted plan to build brick-and-mortar locations through targeting Ahern and its employees,

who possess decades of experience in the marketplace. EquipmentShare's tortious plan included making misleading and defamatory statements aboutAhern, poaching Ahern employees, and misappropriating Ahern's valuable trade secrets. EquipmentShare to grow from zero physical locations to approximately 50 locations in only a few years.

## THE ASSERTED PATENT

22. On November 24, 2015 U.S. Patent No. 9,193,330 ("the '330 patent") was duly and legally issued for an invention titled "Method and a System for Controlling and Monitoring Operation of a Device." Ahern owns all rights, title, and interest in the '330 patent necessary to bring this action, including the right to recover past and future damages.

23. EquipmentShare is not licensed to the '330 patent.

24. Claim 1 of the '330 patent is provided below:

1. A method of controlling and monitoring operation of a rental machine having a keyless start arrangement configured to activate the machine, the method comprising:

> [a] communicating an authorization code via a remote management source to a processor having a memory, wherein the processor regulates operation of the machine and is operatively connected to the keyless start arrangement configured to activate the machine;

> [b] storing the authorization code within the processor memory;

> [c] detecting by the processor an entry of an access code made via a selective input;

> [d] assessing whether the entered access code matches the authorization code;

> [e] authorizing operation of the machine if the entered access code matches the authorization code;

> [f] denying authorized operation of the machine if the entered access code does not match the authorization code; and

> [g] locking out operation of the machine if the processor detects that the access code was disabled upon completion of the authorized operation of the machine and logging in the actual duration of time the machine was in use;

[h] wherein said authorizing operation of the machine includes starting the machine via the remote management source.

25. The inventions of the '330 patent address longstanding needs in the construction equipment industry. Because such construction equipment is often very expensive to purchase, maintain, and store, contractors and operators often prefer to rent such equipment. Typically, a user of rented equipment is required to pick-up and drop-off the equipment at a prescribed location. In some circumstances, the rental company may deliver the rented equipment to its customer's or user's job site, and subsequently collect or remove the equipment at some point after the authorized rental period is finished. In the case of larger construction equipment, such as excavators and loaders, rental companies often deliver the equipment a day or two prior to the actual use by the customer and often remove the equipment a few days (or longer) after the authorized rental period elapses. As a result of the logistical arrangements, the rented equipment is subject to exploitation beyond the duration of authorized use. For instance, if the rented equipment is delivered early, the owner of the equipment is unable to prevent the renter from using the equipment prior to the authorized rental period. The same is true if the rental equipment remains on the construction site after the authorized rental period concludes. This results in unauthorized use of the rental equipment that increases wear on the equipment without compensation to the owner.

26. Daniel Abshire came up with novel and inventive solutions to these longstanding technical and logistical problems in the rental industry, which are embodied in the claims of the '330 patent. Rather than renting equipment through the normal process, which allowed for the exploitation of rental equipment outside the authorized rental period, the '330 patent discloses systems and methods for remotely communicating authorization codes to the rental equipment,

where they are stored in memory. Unlike the normal arrangement, in which the user could start and use the rental equipment outside the authorized window, the inventions of the '330 patent require the entry of an access code, which must match the stored authorization code in order for the keyless start arrangement to start the engine in the rental equipment via a remote management source. If the access code does not match the authorization code, authorization is denied. Moreover, the user can be locked-out by the equipment owner, who can remotely disable the access code. Mr. Abshire also developed novel systems and methods for ensuring that the rental equipment is shut down and locked out so operation of the rental equipment cannot occur outside of a predetermined timeframe.

27. If implemented, the methods and systems of the '330 patent reduce or prevent the unauthorized exploitation of rental equipment.

### EQUIPMENTSHARE'S KNOWLEDGE OF THE '330 PATENT

28. EquipmentShare had actual knowledge of the '330 patent at least as early as 2016.

29. Beginning at least as early as 2009, Mr. Abshire developed business relationships with Eric Tucker, Jeff Tucker, and Mike Long, who, at the time, were employees of a company called Equipment Depot in the Dallas-Fort Worth area.

30. In early 2016, Mr. Tucker reached out to Mr. Abshire and expressed interest in the Ukey Keyless System. Over the next several months Mr. Abshire corresponded with Messrs. Tucker and Long concerning potential business dealings with Mr. Abshire.

31. At least as early as 2016, Messrs. Tucker and Mr. Long formed relationships with EquipmentShare cofounder, Jabbock Schlacks. In 2016, Messrs. Tucker and Mr. Long left Equipment Depot and began working for EquipmentShare. Mr. Eric Tucker was hired as EquipmentShare's Strategic Account Director. Mr. Jeff Tucker was hired as EquipmentShare's Vice President of Sales. Mr. Long was hired as EquipmentShare's Vice President of Operations.

32. Messrs. Tucker and Mr. Long were aware that Mr. Abshire had filed for and obtained the '330 patent.

33. In 2016, Mr. Jeff Tucker contacted Mr. Abshire and stated that Mr. Schlacks wanted to discuss purchasing the '330 patent.

34. After forming relationships with Jabbock Schlacks and EquipmentShare, Messrs. Tuckers and Mr. Long came to learn that the EquipmentShare Track telematics system was experiencing various connectivity issues that disrupted the system's performance. In response to these technical issues with the EquipmentShare Track telematics system, EquipmentShare formed a "New Market Set-Up Team" to go out and repair the connectivity problems in the field.

35. On information and belief, Mr. Eric Tucker and/or Mr. Long told Mr. Schlacks about Mr. Abshire, his relevant experience, and the '330 patent. They also informed Mr. Schlacks that Mr. Abshire could help solve EquipmentShare's connectivity issues.

36. Messrs. Tucker and/or Mr. Long arranged a meeting between Mr. Abshire and Jabbock Schlacks, co-founder of EquipmentShare.

37. Messrs. Tucker and/or Mr. Long informed Mr. Abshire that EquipmentShare was interested in acquiring rights to the '330 patent and would like to discuss keyless start systems and telematics.

38. Mr. Abshire met with Mr. Schlacks in Tomball, Texas. Messrs. Tucker and Mr. Long also attended that meeting.

39. At the meeting, Mr. Abshire was informed that EquipmentShare was interested in Mr. Abshire's inventions and industry expertise. Mr. Schlacks told Mr. Abshire that EquipmentShare was willing to offer Mr. Abshire money and stock options in exchange for

acquiring rights to the '330 patent. Mr. Schlacks believed that Mr. Abshire could help EquipmentShare develop a more viable telematics product.

40. At the meeting, Mr. Schlacks asked Mr. Abshire questions about the subject matter of the '330 patent, including how to configure a system that allows for the functionality described in the '330 patent and how to address the various connectivity issues that the EquipmentShare Track system was experiencing.

41. During the meeting, Mr. Schlacks took notes on his laptop computer as Mr. Abshire answered questions.

42. Shortly after the meeting in Tomball, EquipmentShare began ignoring Mr. Abshire's attempts to follow up, and Mr. Schlacks declined to follow through with his offer to purchase the '330 patent.

43. Within a short period after the meeting in Tomball, EquipmentShare resolved the connectivity issues with the EquipmentShare Track system.

44. On information and belief, Mr. Schlacks and EquipmentShare used the information learned from Mr. Abshire to address issues with EquipmentShare's telematics systems.

45. Notwithstanding its assurances to Mr. Abshire, EquipmentShare declined to take a license to or purchase the '330 patent and instead proceeded to develop and release features in the EquipmentShare Track system that infringe the '330 patent, including the Sentry Keypad and remote authorization.

46. Unable to enforce his intellectual property rights against EquipmentShare on his own, in September 2020, Mr. Abshire assigned all rights in the '330 patent to Ahern with the intent of pursuing infringement claims against EquipmentShare.

**SCHLACKS FILES HIS OWN PATENT**

47. On September 21, 2016, after meeting with Mr. Abshire, Jabbock Schlacks, along with his brother William Schlacks, filed U.S. Provisional Patent Application No. 62/397,673 with the USPTO. The EquipmentShare (assignee of the patent rights) subsequently filed U.S. Patent Application No. 16/335,319 ("the '319 application"), titled Method, System and Apparatus for Equipment Monitoring and Access Control, which claims priority to the earlier provisional application and is still pending before the USPTO.

48. The '319 application contains claims that are strikingly similar (if not identical) to the inventions disclosed in the '330 patent.

49. Despite its knowledge of the '330 patent and its duty of disclosure, candor, and good faith before the USPTO, EquipmentShare did not disclose the '330 patent in any information disclosure statement.

50. As of the filing of this Complaint, EquipmentShare has not yet disclosed the '330 patent to the USPTO.

**COUNT 1: INFRINGEMENT OF THE '330 PATENT**

51. Ahern incorporates by reference the preceding paragraphs as though fully set forth herein.

52. EquipmentShare infringes and/or induces infringement of the '330 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '330 patent including, EquipmentShare Track.[3]

53. For example and as shown below, EquipmentShare Track infringes at least claim 1 of the '330 patent, as it practices a method for controlling and monitoring the operation of a

---

[3] https://www.equipmentshare.com/track

rental machine having a keyless start arrangement configured to activate the machine. EquipmentShare refers to this feature as "Access Control," which replaces the traditional keyed start arrangement with the Sentry Keypad, a keyless start arrangement.



54. The EquipmentShare Track system is configured to communicate an authorization code via a remote management source to a processor having a memory, wherein the processor regulates operation of the machine and is operatively connected to the keyless start arrangement configured to activate the machine. For example, EquipmentShare Track offers a user interface configured to define and communicate an authorization code via a remote management source to a machine in the field via a wireless (e.g., cellular) connection. Once received by the field equipment, those unique codes are stored in digital memory. To provide a wireless connection, Track-enabled machines are fitted with devices configured for cellular connectivity, including the MC-4 Series, MC-3 Series, TTU-720 Series, LMU-3030 Series, and TTU-2830 Series.



55. When an equipment operator enters a code on Sentry Keypad, EquipmentShare Track compares the entered code with the unique code stored in memory and determines whether there is a match. If the code entered on the Sentry Keypad matches the stored code, authorizes the operation of the machine, which includes starting the machine via a remote management source and keyless start arrangement. As explained on EquipmentShare's website, the "Sentry Keypad communicates with Track telematics to alert you when there are multiple unauthorized access attempts, when an authorized user starts up a machine or when a successful lockdown is initiated."[4]

56. If the code entered on the Sentry Keypad does not match the unique code stored in memory, EquipmentShare Track is configured to deny authorized operation of the machine and is further configured to lock out the operation of the machine if a previously active code has been disabled upon completion of the operation of the machine. As stated on EquipmentShare's website, EquipmentShare Track is configured to "keep your fleet safe from unauthorized

---

[4] https://www.equipmentshare.com/features/access-control

operators with remote lockdown action, and disable an authorized account from any browser, any time."[5]

57. EquipmentShare Track is further configured to log and track the duration of time the machine was in use and define parameters for the scope of authorized use. EquipmentShare Track also tracks machine status and location. This information is stored to the cloud and can be accessed and monitored from internet-connected devices.

58. In addition to directly infringing the '330 patent, EquipmentShare induces its customers to infringe the '330 patent by authorizing and instructing its customers to use the EquipmentShare Track system in a manner that infringes the '330 patent with knowledge of the '330 patent and with the knowledge and intent that such conduct on behalf of its customers constitutes infringement of the '330 patent. On information and belief, EquipmentShare provides marketing materials, brochures, videos, and training materials or resources to its customers describing in detail how to operate the EquipmentShare Track system in a manner that infringes the '330 patent.

59. EquipmentShare's infringement of the '330 patent is willful, as EquipmentShare had full knowledge of the patent, discussed licensing the patent from Mr. Abshire, extracting valuable technical information from Mr. Abshire concerning embodiments of his invention, and then proceeding to go to market without a license to the patent.

60. As a result of EquipmentShare's infringement, Ahern has suffered actual and consequential damages. To the fullest extent permitted by law, Ahern seeks recovery of damages at least in the form of a reasonably royalty.

**JURY DEMAND**

61. Ahern hereby demands a jury trial for all issues so triable.

---

[5] https://www.equipmentshare.com/features/access-control

**PRAYER FOR RELIEF**

WHEREFORE, Ahern respectfully requests that this Court enter judgment in its favor ordering, finding, declaring, and awarding Ahern relief as follows:

A.  a final judgment finding that EquipmentShare infringes the '330 patent;

B.  a final judgment finding that EquipmentShare's infringement of the '330 patent is willful;

C.  an award of damages in an amount sufficient to compensate Ahern for EquipmentShare's infringement of the '330 patent until such time as EquipmentShare ceases its infringing conduct, including supplemental damages post-verdict;

D.  injunctive relief prohibiting EquipmentShare from practicing the claims of the '330 patent;

E.  enhanced damages for EquipmentShare's willful infringement pursuant to 35 U.S.C. § 284;

F.  attorneys' fees pursuant to 25 U.S.C. § 285;

G.  pre-judgment and post-judgment interest to the full extent allowed under the law, as well as all other costs recoverable by statute or rule;

H.  and all other relief in law and equity the Court finds appropriate.

Dated: October 15, 2020

Respectfully submitted,

/s/ Theodore Stevenson, III
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500

15

        Dallas, TX 75201
        Telephone: (214) 978-4000
        Telecopier: (214) 978-4044

        Samuel F. Baxter
        Texas State Bar No. 01938000
        sbaxter@mckoolsmith.com
        **MCKOOL SMITH, P.C.**
        104 E. Houston Street, Suite 300
        Marshall, TX 75670
        Telephone: (903) 923-9000
        Telecopier: (903) 923-9099

        **ATTORNEYS FOR PLAINTIFF**
        **AHERN RENTALS, INC.**